Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 3855 | **DATE** | 7/20/10 |
| **CASE TITLE** | Jeremy Schloss (#880564) and Christopher Lane (#873576) v. Phil Reidda, et al. | | |

**DOCKET ENTRY TEXT:**

Plaintiffs' motions to proceed *in forma pauperis* [##5 & 6] are denied. Pursuant to 28 U.S.C. § 1915A, Plaintiffs' complaint is dismissed. This case is terminated. Dismissal is without prejudice to Plaintiffs pursuing their claims in petitions for writs of habeas corpus (assuming each can meet the requirements of 28 U.S.C. § 2254). Plaintiffs' motions for appointment of counsel [##3 and 4] are denied as moot.

■ [For further details see text below.]   **Docketing to mail notices.**

## STATEMENT

Plaintiffs, Jeremy Schloss and Christopher Lane, are civilly committed persons who have been determined to be sexually violent persons (hereinafter, "S.V.P.'s") pursuant to 725 ILCS 207/1 *et seq*. According to the complaint, each has been civilly committed in violation of his due process and equal protection rights. As the Court understands Plaintiffs' complaint, Defendants all appear to be psychologists and administrators working for the Special Evaluations Unit of the Illinois Department of Corrections (hereinafter, "S.E.U."), the body which evaluates and makes recommendations regarding post-sentence civil commitment for S.V.P.'s. Plaintiffs contend that Defendants violated their due process rights by selectively committing them without any set protocol and in violation of the statute. Plaintiffs further allege that without procedural due process, their security level was increased based on the fact that the SEU recommended that they be committed and petitions of civil commitment were filed against them. For several reasons, Plaintiffs' complaint fails to state a cause of action under 42 U.S.C. § 1983.

Plaintiffs may not challenge their civil commitment by way of a civil rights action. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). A finding that the civil proceedings leading to Plaintiffs' civil commitment deprived them of due process would certainly call into question the validity of the orders of commitment.

Regardless of the relief sought, Plaintiffs may not seek relief under § 1983, as their claims are barred by *Heck*, 512 U.S. 477, 486-87. *See Whitlock v. Johnson*, 153 F.3d 380, 389 (7th Cir. 1998) (an inmate may not seek civil damages or injunctive relief for an unconstitutional conviction or sentence until the conviction or sentence has been reversed on direct appeal, declared invalid by a state tribunal, expunged by executive order, or called into question by a federal court on habeas review).

**(CONTINUED)**

AWL

To the extent Plaintiffs who are still civilly detained want to pursue their claims, they must therefore first petition for habeas corpus relief under 28 U.S.C. § 2254, which applies equally both to civil commitments and criminal convictions; Plaintiffs, who are confined civilly at Rushville are "in custody" for purposes of the habeas corpus statute. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 176 (2001). The Court is not permitted simply to convert this § 1983 action to a habeas corpus petition. *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999). Rather, "[i]t should simply be dismissed, leaving to the prisoner to decide whether to refile it as a petition for habeas corpus." *Id.*

Additionally, Defendants are immune from civil liability. As psychologists hired by the state to evaluate the suitability of prisoners for civil commitment after they serve their criminal sentence, they are akin to court appointed psychologists and their function is quasi-judicial in nature. It is well-established that court-appointed psychological evaluators are "protected by the same immunity extended to judges and other judicial officers." *Bartlett v. Weimer*, 268 F.2d 860, 862 (7th Cir. 1959) (affirming dismissal of § 1983 claim against court-appointed physician, who examined mental health of plaintiff and recommended his commitment, on grounds of absolute immunity); *see also Duzynski v. Nosal*, 324 F.2d 924, 928-29 (7th Cir. 1963) (similarly affirming dismissal of case against two doctors who served on court-appointed commission to evaluate plaintiff's mental condition); *Wolff v. Faris*, No. 88 C 10765, 1989 WL 84718, at *7 (N.D. Ill. Jul. 20, 1989) (Hart, J.) (*citing Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1158-59 (9th Cir. 1987)) (dismissing § 1983 claims against court-appointed conciliators who mediated custody and visitation dispute).

Indeed, state and federal courts throughout the country have held that court-appointed evaluators act as "arms of the court" because they fulfill a "quasi-judicial role at the court's request." *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001) (holding that child welfare workers enjoyed "judicial immunity because they acted as 'arms of the court,' similar to a [GAL] or court-appointed doctor or psychologist"); *see Vernon v. Rollins-Threats*, No. 04 C 1482, 2005 WL 3842821, at *4-6 & n. 4 (N.D.Tex. Nov. 2, 2005) (surveying cases and holding that psychologist who testified in child custody case was entitled to immunity, even where plaintiff claimed that psychologist was not licensed or competent); *Duff v. Lewis*, 114 Nev. 564, 568-69, 958 P.2d 82, 85-86 & n. 2 (Nev. 1998) (surveying cases and extending judicial immunity to court-appointed psychologist sued by father who lost custody of his sons based on examiner's report); *Vaughan v. McLeod Reg'l Med. Ctr.*, 372 S.C. 505, 511-12 & n. 6, 642 S.E.2d 744, 747-48 (S.C.2007) (surveying cases and concluding that court-appointed physicians, ordered to evaluate individuals for guardianship proceedings, "are essentially an arm of the judiciary" and are judicially immune from suit challenging "acts performed within the scope of the appointment"). Thus, "[s]ocial workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court." *Millspaugh v. Cty. Dep't of Pub. Welfare of Wabash Cty.*, 937 F.2d 1172, 1176 (7th Cir. 1991) (finding social worker absolutely immune from lawsuit filed by mothers who claimed that she failed to provide the court with certain material favorable to them, neglected to provide notice of hearings, and pursued the litigation for improper motives). As Defendants serve a quasi-judicial role in the evaluation of S.V.P.'s for the appropriateness of civil commitment, they are immune from suit.

The Court recognizes that these evaluators may not be court-appointed but rather retained by the State. To that extent, they are akin to members of the Prisoner Review Board, evaluating inmates as to whether they are suitable to be released from custody on mandatory supervised release. Members of the Illinois Prisoners Review Board are absolutely immune for decisions relating to parole. *Wilson v. Kelkhoff*, 86 F.3d 1438 (7th Cir. 1996), **(CONTINUED)**

| STATEMENT |
|---|

*see also Smith v. Gomez*, 550 F.3d 613, 619 (7th Cir. 2008). The Court finds that the evaluators' function in determining whether S.V.P.'s are to be civilly committed after serving their criminal sentence is substantially similar to that served by members of the P.R.B. and consequently, the same immunity applies to them.

With respect to Plaintiffs' claims that they were placed in segregation and their security level raised when Defendants made a recommendation that they be civilly committed and the civil commitment petition was filed, Plaintiffs further fail to state a claim. The Due Process Clause does not mandate procedural safeguards unless there exists a constitutionally protected liberty interest. *See Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005). Plaintiffs allege they were punished only with disciplinary segregation, and while punishments that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may implicate a liberty interest, *Sandin v. Conner*, 515 U.S. 472, 483-84,(1995); *see also Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), the Seventh Circuit has held that disciplinary segregation does not rise to such a level. *Williams v. Ramos*, 71 F.3d 1246, 1248-50 (7th Cir. 1995).

Plaintiffs also have no liberty interest in retaining a particular security classification. *Adell v. Smith*, 2000 U.S. App. LEXIS 33965 (2000) (E.D. Wis.), *citing Sandin*. While Plaintiffs contend that their security level changed and they were placed in segregation after Defendants evaluated them and made their recommendation with respect to civil commitment, the decisions regarding security level and segregation placement are made within the correctional institution, not by outside consultants. Consequently, Plaintiffs have failed to state a cause of action against the Defendants for violation of their due process rights.

Accordingly, for the foregoing reasons, this suit is dismissed for failure to state a claim upon which relief may be granted. This dismissal is without prejudice to the Plaintiffs seeking habeas corpus relief under 28 U.S.C. § 2254. This case is terminated.

Plaintiffs' motions for appointment of counsel are denied as moot.

*[signature: George W. Lindberg]*